No. 19-____

IN THE

# United States Court of Appeals for the Fourth Circuit

IN RE: MARRIOTT INTERNATIONAL
CONSUMER DATA SECURITY BREACH LITIGATION

ARYEH SIMON and SASSYA SIMON,

Plaintiffs-Petitioners,

v.

MARRIOTT INTERNATIONAL, INC., et al.,

Defendants-Respondents.

On Appeal from the United States District Court
For the District of Maryland
MDL Case No. 19-md-2879; Civil Case No. 19-cv-1792

**PETITION FOR LEAVE TO APPEAL DENIAL OF REMAND
ORDER UNDER THE CLASS ACTION FAIRNESS ACT, 28 U.S.C.
§ 1453(c)(1)**

THEODORE J. FOLKMAN
PIERCE BAINBRIDGE
BECK PRICE &
HECHT LLP
One Liberty Square
Boston, MA, 02109
617-229-5415

CLAIBORNE R. HANE
WILLIAM L. GERACI
PIERCE BAINBRIDGE
BECK PRICE &
HECHT LLP
277 Park Avenue, 45th Fl.
New York, New York 10172
212-484-9866

TILLMAN J. BRECKENRIDGE
ANDREW J. PECORARO
PIERCE BAINBRIDGE
BECK PRICE &
HECHT LLP
601 Pennsylvania Ave., NW
South Tower, Suite 700
Washington, DC 20004
202-759-6925
tjb@piercebainbridge.com

*Counsel for Plaintiffs-Petitioners*

September 30, 2019

UNITED STATES COURT OF APPEALS FOR THE FOURTH CIRCUIT
DISCLOSURE OF CORPORATE AFFILIATIONS AND OTHER INTERESTS

Disclosures must be filed on behalf of <u>all</u> parties to a civil, agency, bankruptcy or mandamus case, except that a disclosure statement is **not** required from the United States, from an indigent party, or from a state or local government in a pro se case. In mandamus cases arising from a civil or bankruptcy action, all parties to the action in the district court are considered parties to the mandamus case.

Corporate defendants in a criminal or post-conviction case and corporate amici curiae are required to file disclosure statements.

If counsel is not a registered ECF filer and does not intend to file documents other than the required disclosure statement, counsel may file the disclosure statement in paper rather than electronic form. Counsel has a continuing duty to update this information.

No. 19-_____    Caption: In re: Marriott Int'l Inc. Consumer Security Data Breach Litigation

Pursuant to FRAP 26.1 and Local Rule 26.1,

Aryeh Simon
(name of party/amicus)

_____

 who is _____Petitioner_____, makes the following disclosure:
(appellant/appellee/petitioner/respondent/amicus/intervenor)

1.    Is party/amicus a publicly held corporation or other publicly held entity?    ☐ YES ☑ NO

2.    Does party/amicus have any parent corporations?    ☐ YES ☑ NO
      If yes, identify all parent corporations, including all generations of parent corporations:

3.    Is 10% or more of the stock of a party/amicus owned by a publicly held corporation or other publicly held entity?    ☐ YES ☑ NO
      If yes, identify all such owners:

4. Is there any other publicly held corporation or other publicly held entity that has a direct financial interest in the outcome of the litigation (Local Rule 26.1(a)(2)(B))? ☑ YES ☐ NO
If yes, identify entity and nature of interest:
   Defendant Marriott International, Inc. is a publicly traded corporation.

5. Is party a trade association? (amici curiae do not complete this question)    ☐ YES ☑ NO
If yes, identify any publicly held member whose stock or equity value could be affected substantially by the outcome of the proceeding or whose claims the trade association is pursuing in a representative capacity, or state that there is no such member:

6. Does this case arise out of a bankruptcy proceeding?    ☐ YES ☑ NO
If yes, identify any trustee and the members of any creditors' committee:

Signature: /s/ Tillman J. Breckenridge          Date: September 30, 2019

Counsel for: Aryeh Simon

## CERTIFICATE OF SERVICE
**************************
I certify that on September 30, 2019 the foregoing document was served on all parties or their counsel of record through the CM/ECF system if they are registered users or, if they are not, by serving a true and correct copy at the addresses listed below:
see Certificate of Service following the Petition

/s/ Tillman J. Breckenridge                    September 30, 2019
        (signature)                                    (date)

- 2 -

UNITED STATES COURT OF APPEALS FOR THE FOURTH CIRCUIT
DISCLOSURE OF CORPORATE AFFILIATIONS AND OTHER INTERESTS

Disclosures must be filed on behalf of <u>all</u> parties to a civil, agency, bankruptcy or mandamus case, except that a disclosure statement is **not** required from the United States, from an indigent party, or from a state or local government in a pro se case.  In mandamus cases arising from a civil or bankruptcy action, all parties to the action in the district court are considered parties to the mandamus case.

Corporate defendants in a criminal or post-conviction case and corporate amici curiae are required to file disclosure statements.

If counsel is not a registered ECF filer and does not intend to file documents other than the required disclosure statement, counsel may file the disclosure statement in paper rather than electronic form.  Counsel has a continuing duty to update this information.

No.  19-_____        Caption: In re: Marriott Int'l Inc. Consumer Security Data Breach Litigation

Pursuant to FRAP 26.1 and Local Rule 26.1,

Sassya Simon
(name of party/amicus)

_____

 who is _____Petitioner_____, makes the following disclosure:
(appellant/appellee/petitioner/respondent/amicus/intervenor)

1.    Is party/amicus a publicly held corporation or other publicly held entity?    ☐ YES ☑ NO

2.    Does party/amicus have any parent corporations?                ☐ YES ☑ NO
       If yes, identify all parent corporations, including all generations of parent corporations:

3.    Is 10% or more of the stock of a party/amicus owned by a publicly held corporation or other publicly held entity?                        ☐ YES ☑ NO
       If yes, identify all such owners:

4.  Is there any other publicly held corporation or other publicly held entity that has a direct financial interest in the outcome of the litigation (Local Rule 26.1(a)(2)(B))? ☑ YES ☐ NO
If yes, identify entity and nature of interest:

  Defendant Marriott International, Inc. is a publicly traded corporation.

5.  Is party a trade association? (amici curiae do not complete this question)    ☐ YES ☑ NO
If yes, identify any publicly held member whose stock or equity value could be affected substantially by the outcome of the proceeding or whose claims the trade association is pursuing in a representative capacity, or state that there is no such member:

6.  Does this case arise out of a bankruptcy proceeding?    ☐ YES ☑ NO
If yes, identify any trustee and the members of any creditors' committee:

Signature: _/s/ Tillman J. Breckenridge_____    Date: __September 30, 2019__

Counsel for: Sassya Simon_____

## CERTIFICATE OF SERVICE
**************************

I certify that on _September 30, 2019_ the foregoing document was served on all parties or their counsel of record through the CM/ECF system if they are registered users or, if they are not, by serving a true and correct copy at the addresses listed below:

see Certificate of Service following the Petition

/s/ Tillman J. Breckenridge_____                    __September 30, 2019___
            (signature)                                                (date)

# TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES ................................................................ iii

INTRODUCTION ............................................................................ 1

QUESTION PRESENTED ................................................................ 2

STATEMENT OF THE CASE .......................................................... 3

    I.     Overview of the Class Action Fairness Act ........................... 3

    II.    Background & Procedural History ....................................... 4

REASONS FOR GRANTING THE PETITION ...................................... 7

    I.     The district court's decision was wrong and contrary to Circuit precedent ................................................................ 8

          A.    The district court cannot disregard the plaintiff's express class definition. ............................................... 8

          B.    The district court cannot hypothetically add this case to other cases to manufacture subject-matter jurisdiction. .............................................................. 13

          C.    The district court cannot treat the complaint as an amended complaint in a dismissed action brought by a different plaintiff. .................................... 16

          D.    The fraudulent joinder rule is irrelevant here. .......... 18

    II.    This case presents an important CAFA-related question regarding whether a federal court can manufacture subject-matter jurisdiction over a state law-based class action that indisputably lacks minimal diversity. ............................................................... 19

A.    The limits of federal subject-matter jurisdiction
      are inviolate ............................................................. 19

B.    The district court's conclusion risks eroding the
      limitations on federal jurisdiction over class
      actions......................................................................... 21

CONCLUSION ..................................................................... 24

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Ahearn v. Charter Twp. of Bloomfield,*
100 F.3d 451 (6th Cir. 1996) ........................................................14

*Am. Nat'l Bank & Trust Co. v. Bic Corp.,*
931 F.2d 1411 (10th Cir. 1991) ...................................................16

*Anderson v. Bayer Corp.,*
610 F.3d 390 (7th Cir. 2010) .......................................................10

*Becherer v. Merrill Lynch, Pierce, Fenner, & Smith, Inc.,*
193 F.3d 415 (6th Cir. 1999) .......................................................17

*BP Am., Inc. v. Oklahoma ex rel. Edmonson,*
613 F.3d 1029 (10th Cir. 2010) ...................................................23

*Caterpillar, Inc. v. Williams,*
482 U.S. 386 (1987) .....................................................................11

*Coleman v. Estes Express Lines, Inc.,*
627 F.3d 1096, 1100 (9th Cir. 2010) .......................................7, 23

*Dennison v. Payday Loans,*
549 F.3d 941 (4th Cir. 2008) ..........................................10, 11, 16

*Dominion Energy, Inc. v. City of Warren Police & Fire Ret. Sys.,*
928 F.3d 325 (4th Cir. 2019) ......................................................7, 8

*Freeman v. Blue Ridge Paper Products, Inc.,*
551 F.3d 405 (6th Cir. 2008) .......................................................12

*Healy v. Ratta,*
292 U.S. 263 (1934) .....................................................................20

*In re Hannaford Bros. Co. Customer Data Sec. Breach Litig.*,
    564 F.3d 75 (1st Cir. 2009)............................................................10

*In re Kitec Plumbing System Products Liability Litigation*,
    No. 09-md-2098-F, 2010 WL 11618052 (N.D. Tex. Aug. 23,
    2010).............................................................................................12

*In re Sprint Nextel Corp.*,
    593 F.3d 699 (7th Cir. 2010) ......................................................10

*Johnson v. Advance America*,
    549 F.3d 932 (4th Cir. 2008) ..............................................9, 10, 11

*Johnson v. Am. Towers, LLC*,
    781 F.3d 693 (4th Cir. 2015) ......................................................18

*Kokkonen v. Guardian Life Ins. Co. of Am*,
    511 U.S. 375 (1994) ....................................................................19

*Lexecon, Inc. v. Milberg Weiss Bershad Hynes & Lerach*,
    523 U.S. 26 (1998) ......................................................................15

*Mayes v. Rapoport*,
    198 F.3d 457 (4th Cir. 1999) ......................................................18

*McCown v. NGS, Inc.*,
    No. 3:14-27719, 2015 WL 251489 (S.D.W. Va. Jan. 16, 2015)11, 21

*McFarland v. Capital One, N.A.*,
    No. TDC-18-2148, 2019 WL 2330872 (D. Md. May 31, 2019) ......13

*Md. Stadium Auth. v. Ellerbe Becket, Inc.*,
    407 F.3d 255 (4th Cir. 2005) ......................................................20

*Merrill Lynch, Pierce, Fenner & Smith Inc. v. Manning*,
    136 S. Ct. 1562 (2016) ................................................................20

*Palisades Collections LLC v. Shorts*,
    552 F.3d 327 (4th Cir. 2008) ......................................................20

*Quicken Loans Inc. v. Alig*,
   737 F.3d 960 (4th Cir. 2013) .......................................................16

*Roberts v. Mars Petcare US, Inc.*,
   874 F.3d 953 (6th Cir. 2017) .......................................................10

*Romero v. Int'l Terminal Operating Co.*,
   358 U.S. 354 (1959) ....................................................................20

*S. Cent. Bell Tel. Co. v. Alabama*,
   526 U.S. 160 (1999) ....................................................................17

*Scimone v. Carnival Corp.*,
   720 F.3d 876 (11th Cir. 2013) ...............................................10, 12

*Smith v. Bayer*,
   564 U.S. 299 (2011) ....................................................................17

*Standard Fire Ins. Co. v. Knowles*,
   568 U.S. 588 (2013) ..................................................................3, 17

*State Farm Fire & Cas. Co. v. Tashire*,
   386 U.S. 523 (1967) ......................................................................3

*Steel Co. v. Citizens for a Better Environ.*,
   523 U.S. 83 (1998) ......................................................................19

*Syngenta Crop Prot., Inc. v. Henson*,
   537 U.S. 28 (2002) ................................................................14, 15

*Tanoh v. Dow Chemical Co.*,
   561 F.3d 945 (9th Cir. 2009) ...............................................10, 12

*Thatcher v. Hanover*,
   659 F.3d 1212 (8th Cir. 2011) ....................................................16

*Vick v. Nash Hosps.*,
   756 F. Supp. 2d 690 (E.D.N.C. 2010)..........................................14

**Statutes**

28 U.S.C. § 1332..................................................................4, 5

28 U.S.C. § 1407....................................................................15

28 U.S.C. § 1453.................................................................5, 7

**Constitutional Provisions**

U.S. Const. Art. III, § 2 ....................................................19

**Other Authorities**

Abbie Bennett, *Class Action Lawsuits are on the Rise*, Columbia
    Bus. Rep. (Apr. 30, 2019) ...........................................21

Judicial Panel on Multidistrict Litigation, *MDL Statistics Report -
    Pending MDL Dockets By Actions Pending* (Sept. 17, 2018)........22

## INTRODUCTION

The parties and the district court here agree that the complaint, as pled, does not show even minimal diversity of citizenship among the parties—the plaintiffs are a class of Americans domiciled abroad, so they have no domiciliary state, and diversity jurisdiction is not available to them.  Yet the district court refused to remand the case, based on "policy justifications for finding federal jurisdiction under CAFA even when it is absent on the face of the plaintiff's complaint."  Dismissing the rule that "the plaintiff is the 'master of the complaint'" as an "old chestnut," the court ruled that the plaintiffs' choice to file in state court with non-diverse plaintiffs was not "legitimate" solely because they purportedly did so to avoid federal jurisdiction.

As the district court saw matters, the question before it was: "Can a class action plaintiff pursue a lawsuit in state court consisting of claims that already are included in a CAFA suit within an existing MDL by manipulating the allegations in their complaint to skirt the minimal diversity requirement of CAFA?"  *Id*.  This incorrect framing of the question led to the court's incorrect answer.  The district court's issue did not address whether the plaintiffs "already are included in a CAFA suit

1

within an existing MDL" when no class has even been certified in the MDL. Its issue did not address whether it is an affront to federalism to treat non-diverse plaintiffs as diverse in the same way courts address claim-splitting to artificially manipulate the amount in controversy. Most importantly, the court did not ask whether it had the power to exercise jurisdiction in a case that fell outside the plain language of CAFA's jurisdictional provisions.

The district court erred by concluding that abstract notions about the efficiency and advantages of multi-district litigation can overcome the straightforward requirements for subject-matter jurisdiction. Under this Court's binding precedent, the district court lacked the power to disregard the undisputed jurisdictional facts, which are insufficient to vest the district court with jurisdiction. Accordingly, the Simons respectfully ask the Court to grant this Petition and to correct the district court's course regarding the limits of federal jurisdiction.

## QUESTION PRESENTED

Whether the district court must remand an action removed under the Class Action Fairness Act that undisputedly does not satisfy CAFA's

minimal diversity requirement, regardless of the court's belief that remand does not satisfy the policy interests underlying CAFA.

## STATEMENT OF THE CASE

## I.    Overview of the Class Action Fairness Act

The Class Action Fairness Act ("CAFA") was enacted to ensure "[f]ederal court consideration of interstate cases of national importance." *Standard Fire Ins. Co. v. Knowles*, 568 U.S. 588, 595 (2013). Although CAFA liberalized the requirements of diversity jurisdiction for class actions, Congress nonetheless acted within the limits set by the Constitution, which requires at least minimal diversity of citizenship in cases arising under state law. *State Farm Fire & Cas. Co. v. Tashire*, 386 U.S. 523, 530-31 (1967) (holding that that minimal diversity is sufficient to meet the requirement of the Constitution). CAFA gives federal district courts jurisdiction over any class action where: (1) the class has at least 100 members (the "numerosity requirement"); (2) at least one plaintiff and one defendant are citizens of different states (the "minimal diversity requirement"); and (3) the aggregate amount in controversy is at least $5 million (the "amount-in-controversy requirement"). 28 U.S.C. §

1332(d)(2), (5), (6). This case involves the second requirement, the requirement of minimal diversity.

## II.    Background & Procedural History

In November 2018, Marriott announced a "data security incident" involving "unauthorized access to the Starwood network since 2014" (the "Data Breach"). Compl. ¶ 1, ECF No. 1-1.[1] Marriott estimated that the Data Breach has affected as many as 383 million "guest records." *Id.* Sensitive personal information of guests was stolen, including names, address, phone numbers, passport numbers, reservation dates, payment card numbers and payment card expiration dates. *Id.* ¶ 38.

The Simons are U.S. citizens who are domiciled in Israel. Following the Data Breach, the Simons were notified by a commercial monitoring service that their personal information had been exposed and accessed by malicious actors on the dark web. *Id.* ¶ 56. Based on this injury, the Simons filed this action in the Connecticut Superior Court. *See generally id.*

The Simons relied on Marriott to protect their personal information, and Marriott's failure to secure guests' information exposed

---

[1] Record citations are to the district court's docket.

their information to malicious actors. They asserted state law causes of action for negligence, breach of implied contract, breach of the duty of good faith, and violations of two Connecticut statutes: the unfair trade practices act and a state law mandating the protection of personal information. *Id.* ¶¶ 77-137. The Simons brought this lawsuit on behalf of themselves and a class of "[a]ll U.S. citizens who are domiciled abroad and whose Personal Information was compromised, accessed, or stolen in the Data Breach." *Id.* ¶ 66.

Marriott removed this action to federal court under CAFA, 28 U.S.C. §§ 1332(d)(2), 1453, and the Judicial Panel on Multidistrict Litigation transferred it to this Court for pretrial consolidation with a pending MDL that included cases raising similar allegations. *See* Defs.' Notice of Removal, ECF No.1 ("Defs.' Notice"); J.P.M.L. Transfer Order, ECF No. 19.

Marriott recognized that the Simon's class action, as pled, does not satisfy CAFA's minimal diversity requirement. *See* Defs.' Notice ¶¶ 20-22. But it argued that the district court should conclude that it had jurisdiction because of the similarities between the Simon's case and two other actions pending in the MDL, arguing that the Simons' claims would

5

be encompassed in those other actions, even though no class had been certified in either of the other two cases. *Id.* ¶¶ 26-28. The defendants also urged the court to "ignore the *Simon* class definition and find minimal diversity based on the class definition" in a previously filed and dismissed action in the same court by a different plaintiff. *See id.* ¶ 34.

The Simons moved to remand the case, arguing that there could be no federal jurisdiction unless CAFA's minimal diversity requirement was met and that even Marriott agreed that it was not met. *See* Pls.' Mot. Remand, ECF No. 28. The district court denied the remand motion on September 20, 2019. *See* Memorandum Opinion, ECF No. 447 (Op.). The court recognized that the "class the Simons seek to represent does not support minimal diversity jurisdiction." *Id.* at 4. But the court concluded that it could nonetheless exercise jurisdiction over the Simons' action because the policies underlying CAFA and multi-district litigation warranted "looking beyond" the plaintiffs' stated class definition both to other cases already pending in federal court, and even to a different complaint, filed by a different plaintiff, that had been dismissed. *Id.* at 5-8.

## REASONS FOR GRANTING THE PETITION

CAFA empowers this Court to "accept an appeal from an order of a district court . . . denying a motion to remand a class action." 28 U.S.C. § 1453(c)(1). Permission to appeal should be granted when "the petition presents an important CAFA-related question." *Dominion Energy, Inc. v. City of Warren Police & Fire Ret. Sys.*, 928 F.3d 325, 334 (4th Cir. 2019). Immediate appeal is also appropriate when CAFA-related question is unsettled, or when the "jurisdictional decision under CAFA is incorrect, or at least fairly debatable." *Id.*; *Coleman v. Estes Express Lines, Inc.*, 627 F.3d 1096, 1100 (9th Cir. 2010). Other relevant factors when evaluating a petition for permission to appeal under the CAFA provisions include: whether the question presented is "consequential to the resolution of a particular class action;" whether the question is "likely to evade effective review if left for consideration only after a final judgment;" whether the question "is likely to recur;" whether the order from which review is sought is "sufficiently final to position the class action for intelligent review;" and "[w]hether the probable harm to the petitioners if an immediate appeal is denied outweighs the probable

harm to the other parties should an immediate appeal be entertained."

*Dominion Energy, Inc.*, 928 F.3d at 334.

In this case all factors weigh in favor of granting leave to appeal.

## I.    The district court's decision was wrong and contrary to circuit precedent.

### A.    The district court cannot disregard the plaintiff's express class definition.

Granting this Petition is particularly appropriate because the district court's order was "incorrectly decided or at least fairly debatable." *Dominion Energy, Inc.*, 928 F.3d at 334. In concluding that it had jurisdiction, the district court disregarded the plaintiffs' class definition, improperly relied upon separate pending federal cases, and concluded that the Simons were bound by the complaint in a dismissed action that was brought by another plaintiff. None of these bases for the court's decision are correct.

The defendants below urged the district court to "ignore the [Simons'] class definition," Defs.' Notice ¶ 34, and the district court obliged. Apart from a cursory acknowledgement that the plaintiff's proposed class does not support minimal diversity jurisdiction, the district court entirely ignored the Simons' complaint. Op. at 4. But under

longstanding Fourth Circuit precedent, the district court was required to apply the plaintiffs' choice to limit the class by its members' citizenship, even if that choice precludes federal jurisdiction.

In *Johnson v. Advance America*, 549 F.3d 932 (4th Cir. 2008), the plaintiff brought a class action in South Carolina state court, alleging that the defendant payday loan company had violated a South Carolina law prohibiting unconscionable loans. *Id.* at 933. The class was defined to include only "citizens of South Carolina." *Id.* at 934, 936. The defendant alleged minimal diversity under CAFA and removed the action to federal court. *Id.* at 934. It argued that the plaintiffs' proposed class definition should be interpreted to include anyone who may have once been a South Carolina citizen, but had subsequently moved to other states. *Id.* at 936. The defendant claimed that *that* class would include at least one citizen of another state and that CAFA's minimal diversity requirement was therefore satisfied. *Id.*

This Court flatly rejected the defendants' argument. The Court explained that the plaintiffs had "limited the class to [only] citizens of South Carolina." And because the defendant was also a citizen of South Carolina, there was no basis for federal jurisdiction under CAFA. *Id.* at

937-38. The Court recognized that "the plaintiffs . . . have taken care to restrict the scope of their allegations so as to avoid federal jurisdiction under CAFA." *Id.* at 937. But the Court held that the plaintiffs, as "masters of their complaint . . . can choose to circumscribe their class definition" to avoid federal jurisdiction under CAFA. *Johnson*, 549 F.3d at 937; *see also Dennison v. Payday Loans*, 549 F.3d 941, 943 (4th Cir. 2008) (applying the same rule to substantively identical facts and allegations). There was no duty for the plaintiff to include everyone who was potentially injured in the class. Other courts of appeals have reached the same conclusion.[2]

---

[2] *See, e.g.*, *Roberts v. Mars Petcare US, Inc.*, 874 F.3d 953, 958 (6th Cir. 2017) ("[E]ven after CAFA, plaintiffs remain the masters of their claims and can choose whom they want to sue."); *Scimone v. Carnival Corp.*, 720 F.3d 876, 882 (11th Cir. 2013) ("[P]laintiffs are the 'master of the complaint' and are 'free to avoid federal jurisdiction by structuring their case to fall short of a requirement of federal jurisdiction" so long as the method of avoidance is not fraudulent. (internal citations omitted)); *In re Sprint Nextel Corp.*, 593 F.3d 699, 673 (7th Cir. 2010) ("[P]laintiffs are free to circumscribe their class definitions so that they can . . . avoid federal jurisdiction."); *Anderson v. Bayer Corp.*, 610 F.3d 390, 393 (7th Cir. 2010) ("[T]he general rule in a diversity case is that plaintiffs as masters of the complaint may include (or omit) claims or parties in order to determine the forum." (internal quotation marks and citation omitted)); *In re Hannaford Bros. Co. Customer Data Sec. Breach Litig.*, 564 F.3d 75, 81 (1st Cir. 2009) (same); *Tanoh v. Dow Chemical Co.*, 561 F.3d 945, 953 (9th Cir. 2009) (explaining that refusing federal

The Court's analysis in *Johnson* and other circuits' analysis in other cases apply with equal force here. The Simons, as "masters of their complaint," limited membership in their proposed class to only "U.S. citizens domiciled abroad." Compl. ¶ 34. Whatever the reason for the Simons' choice to narrow the class to geographically similarly-situated people, the actual definition of the class that the plaintiffs chose is what matters for jurisdictional purposes. *See Johnson*, 549 F.3d at 937; *Dennison*, 549 F.3d at 943; *see also Caterpillar, Inc. v. Williams*, 482 U.S. 386, 392 (1987). Indeed, at least one district court in this Circuit has come to the same conclusion, holding that it is "within a plaintiff's discretion to craft a geographically limited class." *McCown v. NGS, Inc.*, No. 3:14-27719, 2015 WL 251489 at *3 (S.D.W. Va. Jan. 16, 2015). That the district court in this case both ignored binding Fourth Circuit precedent and created a split in authority within the circuit highlights the need for immediate review.

---

jurisdiction over an alleged mass action suit that did not meet CAFA's jurisdictional requirements is consistent with the "well-established rule that plaintiffs . . . may choose their forum by selecting state over federal court").

The cases on which the district court relied do not alter this conclusion. Both *Freeman v. Blue Ridge Paper Products, Inc.*, 551 F.3d 405 (6th Cir. 2008), and *In re Kitec Plumbing System Products Liability Litigation* ("*Kitec*"), No. 09-md-2098-F, 2010 WL 11618052 (N.D. Tex. Aug. 23, 2010), involved plaintiffs who attempted to split their claims into multiple suits, each below CAFA's amount-in-controversy requirement. The courts in those cases found that there was no "colorable" basis for dividing lawsuits as the plaintiffs had done, other than to avoid federal jurisdiction. *See Freeman*, 551 F.3d at 407; *Kitec*, 2010 WL 11618052 at *2-3.

Contrary to the district court's ruling, neither *Freeman* nor *Kitec* stand for the principle that a plaintiff cannot limit a proposed class based on class members' citizenship. Both holdings are limited to addressing only CAFA's amount-in-controversy requirement. *See Tanoh*, 561 F.3d at 956 (expressly declining to read *Freeman* to stand "for the general proposition that plaintiffs' lawyers cannot 'game' the system" under CAFA, noting that *Freeman* "disclaim[ed] any such reading")*; Scimone*, 720 F.3d at 886 (explaining that cases discussing CAFA's amount-in-controversy requirement "cannot be read to suggest that all sections of

12

CAFA strip plaintiffs of their traditional role as masters of their complaint).  And to the extent that these decisions could be read more broadly than their facts, they are contrary to the Fourth Circuit precedent in *Johnson* and *Dennison*, which plainly hold that a plaintiff may avoid federal jurisdiction by circumscribing the geographic boundaries of the proposed class.

Moreover, neither decision is binding in this circuit.  *Kitec* is an unpublished district court decision from Texas that, since it was issued in 2010, has never been cited by any court until now.  And *Freeman* has been expressly rejected by at least three circuits. *See McFarland v. Capital One, N.A.*, No. TDC-18-2148, 2019 WL 2330872, at *3 (D. Md. May 31, 2019) (collecting cases).   The district court's reliance on these inapposite decisions and the unsettled nature of the question reinforces the need for this Court to grant this petition and provide guidance to the district courts within this Circuit.

**B.    The district court cannot hypothetically add this case to other cases to manufacture subject-matter jurisdiction.**

A federal court faced with a challenge to its subject-matter jurisdiction must look to the complaint in the case at hand, not to the

13

complaints in other cases. *See Syngenta Crop Prot., Inc. v. Henson*, 537 U.S. 28, 34 (2002). Whether a pending federal action shares a common nucleus of operative facts with a removed state action is immaterial to the question of jurisdiction. "An already-existing federal action cannot provide the mechanism for removal of a non-removable state-court action, even if such a removal would be an efficient result." *Vick v. Nash Hosps.*, 756 F. Supp. 2d 690, 693 (E.D.N.C. 2010) (internal quotation marks and citation omitted). Instead, a removing defendant must show that the court can exercise jurisdiction over the removed action, considered on its own. *See Ahearn v. Charter Twp. of Bloomfield*, 100 F.3d 451, 456 (6th Cir. 1996).

Here, the Data Breach has led to at least 80 consumer class action suits, some of which have been consolidated into multidistrict litigation in the District of Maryland. *See Mendez v. Marriott Int'l, Inc.*, No. PWG-19-520 (D. Md.) (filed Dec. 17, 2018); *Trager v. Marriott Int'l, Inc.*, No. PWG-18-3745 (D. Md.) (filed Dec. 5, 2018). The district court concluded that it could exercise jurisdiction over this action because the Simons' claims are "wholly included" within cases already pending in the MDL. Op. at 5, 7. There is no basis for such an exercise of jurisdiction because

district courts cannot manufacture jurisdiction by association with another case. Indeed, the Supreme Court has expressly rejected the argument that a federal court can tie a state court case over which it lacks jurisdiction to a similar case over which the court has jurisdiction in order to make the state case removable. *Syngenta*, 537 U.S. at 33-34.

The district court ignored this binding rule in favor of policy justifications underlying MDL litigation. But the fact that these cases are part of an MDL does not change the result. The MDL provision is simply a venue statute; it provides for the transfer of federal cases but does not authorize a court to exercise jurisdiction over a case that lacks either federal question or even minimal diversity jurisdiction *See* 28 U.S.C. § 1407 (permitting the transfer and consolidation of *federal* district court cases); *see also Lexecon, Inc. v. Milberg Weiss Bershad Hynes & Lerach*, 523 U.S. 26, 40 (1998) (explaining that although permitting transferee courts to try coordinated cases might "be more desirable than preserving a plaintiff's choice of venue . . . the proper place for resolving that issue remains the floor of Congress").

In any event, the Simons are not parties to any other case consolidated in the MDL. At the time the Simons filed their complaint,

and even now, no class has been certified in the MDL cases on which

Marriott and the district court relied. The court has no authority to

redraft the Simons proposed class to ensure that it falls within one of the

other actions. *See Dennison*, 549 F.3d at 943 ("[Plaintiff] defined the class

to constitute only citizens of [one state], and [defendant] cannot redefine

the class to include non-citizens.").

### C. The district court cannot treat the complaint as an amended complaint in a dismissed action brought by a different plaintiff.

A plaintiff cannot dismiss an action and then refile a new complaint

in hopes of avoiding federal jurisdiction. *See Thatcher v. Hanover*, 659

F.3d 1212, 1213 (8th Cir. 2011). *But see Am. Nat'l Bank & Trust Co. v.

Bic Corp.*, 931 F.2d 1411 (10th Cir. 1991) (holding that a plaintiff may

voluntarily dismiss an action "even where the plaintiff's only motive is to

recommence the action in state court"). But "[a]n unnamed member of a

proposed but uncertified class is not a party to the litigation." *Quicken

Loans Inc. v. Alig*, 737 F.3d 960, 966 (4th Cir. 2013). Thus, a court cannot

treat a complaint by one plaintiff as an analog that relates back to a

different case brought by a different plaintiff. The fact that the second

plaintiff might have been a member of the first plaintiff's *proposed* class does not change the analysis.

Here, the district court relied on the fact that another American citizen domiciled abroad, Melissa Frank, filed a similar action in Connecticut state court and voluntarily dismissed it shortly after removal. *See Frank v. Marriott Int'l Inc.*, No. 19-cv-326 (D. Conn.). Frank was represented by the same counsel now representing the Simons, but regardless, nothing Frank did or did not do in her case can bind the Simons as non-parties to that action. "[A] plaintiff who files a proposed class action cannot legally bind members of the proposed class before the class is certified." *Knowles*, 568 U.S. at 593 (citing *Smith v. Bayer*, 564 U.S. 299, 315 (2011) ("Neither a proposed class action nor a rejected class action may bind nonparties.")); *see also Becherer v. Merrill Lynch, Pierce, Fenner, & Smith, Inc.*, 193 F.3d 415, 427-28 (6th Cir. 1999) (recognizing that the plaintiff in that action could not be bound by an earlier attempted class action litigation brought by different named plaintiffs). Nor is it relevant that they had the same counsel. *See S. Cent. Bell Tel. Co. v. Alabama*, 526 U.S. 160, 168 (1999) (the fact that the same lawyers represented two sets of plaintiffs "created no special representational

relationship between the earlier and later plaintiffs" and finding no issue preclusion).

### D. The fraudulent joinder rule is irrelevant here.

The district court misapplied the fraudulent joinder rule in a way that would expand it beyond recognition. The rule permits removal when a plaintiff joins a non-diverse defendant against whom there is "no possibility" of establishing a cause of action. *Johnson v. Am. Towers, LLC*, 781 F.3d 693, 704 (4th Cir. 2015); *Mayes v. Rapoport*, 198 F.3d 457, 466 (4th Cir. 1999). It allows courts to look beyond the complaint to determine whether there really is a claim against the defendant whose presence destroys diversity. *See Mayes*, 198 F.3d at 464. And that illustrates the underlying flaw throughout the district court's decision. The court repeatedly asserted it was "looking beyond the pleadings," but it failed to do the work of actually taking that look. Looking beyond the pleadings, litigation would go forward on state claims limited to a non-diverse class. There would be no party to the action who is not actually involved and could not be held liable as a defendant. In short, there is no fraud to look beyond the pleadings and find. Thus, the petition should be

granted at least on the ground that the district court's decision was wrong and contrary to circuit precedent.

## II. This case presents an important CAFA-related question regarding whether a federal court can manufacture subject-matter jurisdiction over a state law-based class action that indisputably lacks minimal diversity.

### A. The limits of federal subject-matter jurisdiction are inviolate

This case presents an issue of exceptional importance. The district court has taken for itself a power federal courts do not have, upsetting the balance between the state and federal courts in the name of protecting CAFA's "policy" goals.

Federal courts are courts of limited jurisdiction. *Kokkonen v. Guardian Life Ins. Co. of Am*, 511 U.S. 375, 377 (1994). They may exercise jurisdiction only when authorized by the Constitution and by statute, "which [power] is not to be expanded by judicial decree." *Id.* A federal court that lacks subject-matter jurisdiction has no power to "proceed at all in any cause." *Steel Co. v. Citizens for a Better Environ.*, 523 U.S. 83, 94 (1998); *see also* U.S. Const. Art. III, § 2.

Cases removed from state court raise particular concerns regarding the exercise of federal jurisdiction. Due regard for the states and their

courts requires that federal courts "scrupulously confine their own jurisdiction to the precise limits" set by Congress. *Healy v. Ratta*, 292 U.S. 263, 270 (1934); *see also Merrill Lynch, Pierce, Fenner & Smith Inc. v. Manning*, 136 S. Ct. 1562, 1573 (2016). The Supreme Court has repeatedly refused to construe federal jurisdictional statutes more broadly than their language permits in order to avoid doing violence to the federal/state balance. *Merrill Lynch*, 136 S. Ct. at 1573; *see also Md. Stadium Auth. v. Ellerbe Becket, Inc.*, 407 F.3d 255, 260 (4th Cir. 2005) (noting federal courts' duty to construe removal jurisdiction strictly because of significant federalism concerns implicated by removal). The Court's long-standing jurisprudence reflects a "deeply felt and traditional reluctance . . . to expand the jurisdiction of federal courts through a broad reading of jurisdictional statutes." *Merrill Lynch*, 136 S. Ct. at 1573 (quoting *Romero v. Int'l Terminal Operating Co.*, 358 U.S. 354, 379 (1959). Thus, it is the duty of any court "to interpret the [CAFA] statute as it was written," *Palisades Collections LLC v. Shorts*, 552 F.3d 327, 336 (4th Cir. 2008), and if a particular action, as pleaded, does not fall within the limits set by Congress, the court has no choice but to remand the action. Protecting the limits of federal jurisdiction is critically

important, and the district court's disregard of those limits here warrants review.

## B.    The district court's conclusion risks eroding the limitations on federal jurisdiction over class actions.

The district court concluded that allowing the Simons to "manipulate" their class definition to avoid federal jurisdiction would run counter to the "policy justifications" underlying CAFA and MDL litigation.  Op. at 7-9.  The court's rationale is out of place in a jurisdictional motion, which is addressed to the court's power, and if accepted, it could dramatically impact future class action litigation.  The number of class action suits has continuously risen over the years.  *See* Abbie Bennett, *Class Action Lawsuits are on the Rise*, Columbia Bus. Rep. (Apr. 30, 2019).[3]  And plaintiffs commonly circumscribe their proposed classes based on some geographic criteria.  *See, e.g.*, *McCown*, 2015 WL 251489, at *3 (recognizing that a plaintiff's "geographically limited class" is a "practically reasonable and even common option").

Under the district court's rationale, the federal courts would be able to assume original jurisdiction over cases where diversity is absent

---

[3] Available at: https://columbiabusinessreport.com/news/law/76380/.

whenever an MDL based on similar allegations exists.  Its reasoning is
not limited to class cases.  The *only* constraint it mentions to the district
courts' power to disregard pleadings is that the court cannot exercise
jurisdiction over "legitimately filed" cases in state courts.  Op. at 10.  The
court did not explain what constitutes a "legitimately filed" case, and its
tautological basis for finding the Simons' complaint illegitimate is that
the Simons were trying to have their case heard in the Connecticut
courts.  On this reasoning, any non-diverse plaintiff who opts out of a
class and decides to pursue his or her own claim in state court is subject
to removal right back to federal court.

Review is especially appropriate in this case because it is relevant
to both class action suits and MDL litigation.  Cases assigned to MDLs
represent nearly 47% of the federal civil caseload.  *See* Judicial Panel on
Multidistrict Litigation, *MDL Statistics Report - Pending MDL Dockets
By Actions Pending* (Sept. 17, 2018).[4]  And as noted, class action lawsuits
are exponentially increasing.  District courts therefore "are likely to
encounter [similar] questions in future cases and will benefit from the

---

[4] Available at: https://www.jpml.uscourts.gov/sites/jpml/files/Pending_
MDL_Dockets_By_Actions_Pending-September-17-2018.pdf.

22

development of a body of law on them." *BP Am., Inc. v. Oklahoma ex rel. Edmonson*, 613 F.3d 1029, 1035 (10th Cir. 2010). And CAFA question will "evade effective review if left for consideration only after final judgment." *Id.* at 1034; *see also Coleman*, 627 F.3d at 1101.

Finally, the CAFA question here is consequential to the existence of federal jurisdiction in this case. The question of federal jurisdiction turns entirely on whether the Simons' action satisfies CAFA minimal diversity requirement. That question presented is well-positioned "for intelligent review" because no factual development is necessary and "[t]he issues were fully briefed below, resulting in a reasoned remand order." *Coleman*, 627 F.3d at 1101.

Moreover, the balance of harms in this case favors immediate appellate review. "[T]he only harm [defendants] . . . will suffer if the remand order is appealed is delay." *Id.* at 1101. On the other hand, the Simons will lose almost any chance of litigating this case in their preferred forum if they are not allowed to appeal until after the MDL reaches final judgment.

## CONCLUSION

For the foregoing reasons, the Simons respectfully request that the Court grant permission to appeal the district court's erroneous denial of their motion to remand.

Respectfully Submitted,

/s/  Tillman J. Breckenridge
Tillman J. Breckenridge
PIERCE BAINBRIDGE
BECK PRICE & HECHT LLP
601 Pennsylvania Ave., NW
South Tower, Suite 700
Washington, DC 20004
202-759-6925
tjb@piercebainbridge.com

## CERTIFICATE OF COMPLIANCE

Pursuant to Federal Rules of Appellate Procedure 5(c) and 32(c)(2),

I certify that this Brief of Appellee is proportionately spaced and contains

4653 words excluding parts of the document exempted by Rule

32(a)(7)(B)(iii).

/s/ Tillman J. Breckenridge
Tillman J. Breckenridge
PIERCE BAINBRIDGE
BECK PRICE & HECHT LLP
601 Pennsylvania Ave., NW
South Tower, Suite 700
Washington, DC 20004
202-759-6925
tjb@piercebainbridge.com

September 30, 2019                    Counsel for Petitioner

## CERTIFICATE OF SERVICE

I certify that on September 30, 2019, the Petition for Permission to

Appeal was served on all parties through their counsel listed below by

first-class mail, and a courtesy copy was e-mailed to them.

Daniel R. Warren
Lisa M. Ghannoum
Baker & Hostetler LLP
127 Public Square, Suite 2000
Cleveland, OH 44114
Tel: (216) 621-0200
Email: dwarren@bakerlaw.com
Email: lghannoum@bakerlaw.com


Gilbert S. Keteltas
Baker & Hostetler LLP
1050 Connecticut Ave. NW, Suite 1100
Washington, D.C. 20036
Tel: (202) 861-1530
Email: gketeltas@bakerlaw.com

/s/   Tillman J. Breckenridge
Tillman J. Breckenridge
PIERCE BAINBRIDGE
BECK PRICE & HECHT LLP
601 Pennsylvania Ave., NW
South Tower, Suite 700
Washington, DC 20004
202-759-6925
tjb@piercebainbridge.com

# APPENDIX

IN THE UNITED STATES DISTRICT COURT
**FOR THE DISTRICT OF MARYLAND**
*Southern Division*

| | | |
|---|---|---|
| **ARYEH SIMON,** *et al.*, | * | |
| **Plaintiffs,** | * | |
| v. | * | **Case Nos.: PWG-19-2879;** |
| | | **PWG-19-1792** |
| **MARRIOTT INTERNATIONAL, INC.,** *et al.*, | * | |
| | * | |
| **Defendants.** | * | |

\*    \*    \*    \*    \*    \*    \*    \*    \*    \*    \*    \*    \*    \*

**MEMORANDUM OPINION AND ORDER**

Plaintiffs Aryeh and Sassya Simon, on behalf of themselves and others similarly situated, filed suit in state court in Connecticut seeking permanent injunctive relief and monetary damages from Defendants[1] for claims arising out of the data breach incident that is the subject of the Multidistrict Litigation against Marriott ("Marriott MDL") pending before me, *In re Marriott*, No. PWG-19-2879.  *See* Compl., ECF No. 1-1.  Marriott removed the action to federal court in Connecticut; the case was transferred to this Court as part of the Marriott MDL, and the Simons filed a Motion to Remand to Connecticut state court for lack of subject matter jurisdiction.  *See* Pls.' Mot., ECF No. 28; Pls.' Mem. 1, ECF No. 29.  Because this Court has jurisdiction over class action claims that subsume the Simons' claims, this Court has jurisdiction over the Simons' claims, and the Motion to Remand is denied.

---

[1] Plaintiffs brought this action against three Defendants: Marriott International, Inc., Starwood Hotels & Resorts Worldwide LLC, and Arne M. Sorenson as President and Chief Executive Officer of Marriott.  Compl., ECF No. 1-1.  I will refer to them collectively as "Marriott."

**Factual Background**

To provide context, I begin with an action that another litigant, Melissa Frank, filed against Marriott. Frank filed suit in Connecticut state court against Marriott on behalf of "American citizens who *live abroad* and whose Personal Information was accessed, compromised, or stolen in the [Marriott] Data Breach." *Frank* Compl. ¶ 59, ECF No. 1-6 (emphasis added); *see Frank v. Marriott Int'l Inc.*, No. 19-cv-326 (D. Conn.). Marriott removed the case to the United States District Court for the District of Connecticut pursuant to 28 U.S.C. § 1332(d). *Frank* Notice of Removal, ECF No. 1-7. Marriott argued the court had diversity jurisdiction under the Class Action Fairness Act ("CAFA"), 28 U.S.C. § 1711, because there was likely one person in Frank's action domiciled in the United States in a state other than Delaware or Maryland, where Marriott is a citizen, and therefore CAFA's requirement of minimal diversity was met.[2] *Id.* The next day, plaintiff's counsel voluntarily dismissed *Frank*. *Frank* Notice of Voluntary Dismissal, ECF No. 1-8. The same counsel then filed this action on behalf of the Simons, again in Connecticut state court. Compl. 1.[3]

The Simons seek to represent "[a]ll U.S. citizens who are *domiciled abroad* and whose Personal Information was compromised, accessed, or stolen in the [Marriott] Data Breach." Compl. ¶ 66 (emphasis added). Marriott removed the suit to the United States District Court for the District of Connecticut pursuant to 28 U.S.C. § 1332(d), based on diversity jurisdiction under CAFA, and sought its inclusion into the Marriott MDL. *See* Defs.' Notice of Removal, ECF No. 1. The Judicial Panel on Multidistrict Litigation transferred it to this Court for inclusion in the

---

[2] 28 U.S.C. § 1332(d)(2)(A).
[3] Citations are to the Simons' individual case, not the Marriott MDL, unless otherwise noted.

MDL, despite the Simons' efforts to keep the action in state court. J.P.M.L. Transfer Order, ECF No. 19.

The Simons have filed a Motion to Remand, arguing that this Court does not have subject matter jurisdiction over this action because CAFA's minimal diversity requirement is not met. *See* Pls.' Mot. & Mem. The parties have fully briefed the motion. ECF Nos. 29, 36, 38. A hearing is not necessary. *See* Loc. R. 105.6.

## **Standard of Review**

If a federal court determines that it does not have jurisdiction over a case that has been removed from state court, the federal court must remand the case back to state court. *See* 28 U.S.C. § 1447(c). In considering a motion to remand, the court must "strictly construe the removal statute and resolve all doubts in favor of remanding the case to state court." *Richardson v. Phillip Morris Inc.*, 950 F. Supp. 700, 702 (D. Md. 1997) (quoting *Creekmore v. Food Lion, Inc.*, 797 F. Supp. 505, 507 (E.D. Va. 1992)).

The burden of establishing jurisdiction rests with the party seeking removal, here Marriott. *Dixon v. Coburg Dairy, Inc.*, 369 F.3d 811, 816 (4th Cir. 2004). The party asserting subject matter jurisdiction must prove by a preponderance of the evidence the facts necessary to establish jurisdiction. *Vest v. RSC Lexington, LLC*, No. 16-3018-CMC, 2016 WL 6646419, at *7 (D.S.C. Nov. 10, 2016). I can consider facts outside the pleadings and am not limited by the allegations in a plaintiff's complaint when evaluating a motion to remand. *See United States v. Smith*, 395 F.3d 516, 519 (4th Cir. 2005) (considering the entire record in evaluating a motion to remand); *Linnin v. Michielsens*, 372 F. Supp. 2d 811, 819 (E.D. Va. 2005) (holding that the court has "authority to look beyond the pleadings and consider summary-judgment-type evidence, such as the affidavits and the depositions accompanying either a notice of removal or a motion to remand").

## Discussion

The Simons do not challenge Defendants' assertions in their notice of removal that CAFA's requirements for numerosity (100 plaintiffs), 28 U.S.C. § 1332(d)(5)(B), and amount-in-controversy (five million dollars), 28 U.S.C. § 1332(d)(2) are both met. *See* Pls.' Mot. & Mem.; Defs.' Notice of Removal. Therefore, the only issue here is whether minimal diversity exists under CAFA.

Under CAFA, minimal diversity exists if "any member of a class of plaintiffs is a citizen of a State different from any defendant." 28 U.S.C. § 1332(d)(2)(A). It is not disputed that the class the Simons seek to represent does not support minimal diversity jurisdiction if only the allegations within the four corners of the Complaint are considered. The Simons seek to represent "[a]ll U.S. citizens who are domiciled abroad and whose Personal Information was compromised, accessed, or stolen in the [Marriott] Data Breach." Compl. ¶ 66. Because U.S. citizens who are domiciled abroad are "stateless" (and therefore not a citizen of any State), they cannot be diverse from any defendant. *See Newman-Green, Inc. v. Alfonzo-Larrain*, 490 U.S. 826, 828 (1989) (holding that, for diversity jurisdiction purposes, one must be a citizen of the United States *and* domiciled in a State); *see also Herrick Co., Inc. v. SCA Commc'ns*, 251 F.3d 315, 322 (2d Cir. 2001) (holding that a U.S. citizen that is domiciled abroad cannot be diverse from a U.S. citizen that is also domiciled in a State).

Marriott argues that this Court has jurisdiction nonetheless because federal jurisdiction already attached to two CAFA class actions in this MDL before the Simons filed their suit, that broadly defined their classes as: "[a]ll persons [whose personal identifying information] was accessed, compromised, or stolen from Marriott" because of the data breach. *See* Compl. ¶ 59, ECF No. 1 in *Mendez v. Marriott Int'l, Inc.*, No. PWG-19-520 (D. Md.) (filed Dec. 17, 2018);

4

Compl. ¶ 46, ECF No. 1 in *Trager v. Marriott Int'l, Inc.*, No. PWG-18-3745 (D. Md.) (filed Dec. 5, 2018). In Marriott's view, the *Mendez* and *Trager* classes are broad enough to include within them the Simons' claims and those of all the putative class members that they purport to represent. Defs.' Opp'n 6. And because the Simons' complaint was filed after both *Mendez* and *Trager* and the opening of the Marriott MDL, this Court already had jurisdiction over the Simons' claims through the Marriott MDL. *Id.* at 7. Marriott also argues that, because there is evidence that the Simons' complaint is an attempt to skirt federal jurisdiction and CAFA's efficiency goals, and because the Simons are, in essence, trying to divest this court of jurisdiction over class members whose claims properly are before it, this Court has authority to deny the Simons' motion to remand in order to maintain its existing jurisdiction. *Id.* at 4. I agree.

In reaching this result, I must acknowledge that this issue appears to be one of first impression. My research has not yielded any case from the Fourth Circuit, this Court, or another jurisdiction, that has dealt with the narrow issue before me: Can a class action plaintiff pursue a lawsuit in state court consisting of claims that already are included in a CAFA suit within an existing MDL by manipulating the allegations in their complaint to skirt the minimal diversity requirement of CAFA? However, case law addressing the federal court's jurisdiction and parties' efforts to avoid it under analogous circumstances is informative and supports the conclusion which I have reached.

### A. Crafting a complaint to avoid CAFA jurisdiction

While the old chestnut that the plaintiff is the "master of the complaint" is true, there are limits to that sovereignty. For example, a plaintiff cannot tailor a suit (or series of suits) to avoid federal jurisdiction by manipulating the amount in controversy or number of class members to fall short of the CAFA requirements. For example, in *Freeman v. Blue Ridge Paper Prods., Inc.*, on

review of a motion to remand, the Sixth Circuit held that the plaintiffs were not permitted to divide

a lawsuit into five separate state court cases—each one seeking under five million dollars in

damages—to avoid CAFA jurisdiction. 551 F.3d 405, 406-07 (6th Cir. 2008). The court required

the aggregation of the five cases after defendant removed to federal court because it determined,

after looking beyond the pleadings, that there was "no colorable basis" for the pleading tactic used

by plaintiffs "other than to frustrate CAFA," and that splintering what, in essence, was a single

lawsuit into multiple suits did not deprive the federal court of jurisdiction. *Id.* at 406-09.[4] The

court noted that the purpose of CAFA is to "allow defendants to defend large interstate class

actions in federal court," and concluded that CAFA's purpose justified the forced aggregation,

notwithstanding the plaintiffs' desire to balkanize their claims into a series of suits to remain in

state court. *Id.* at 407. The court reasoned that "[enacting] CAFA was necessary because the

previous law 'enable[d] lawyers to "game" the procedural rules and keep nationwide or multi-state

actions in state courts.'" *Id.* at 408 (quoting S. Re. No. 109-114, at 5 (2005)).

*In re Kitec*, No. 09-md-2098-F, No. 10-cv-1193-F, No. 10-cv-1192-F, 2010 WL 11618052,

at *1 (N.D. Tex. Aug. 23, 2010), provides similar guidance. In that case, two plaintiffs filed class

actions in state court (the *Steiner* class and the *Hillary* class). Both plaintiffs were represented by

---

[4] Other Circuits have distinguished *Freeman*, but those cases do not detract from its holding that a plaintiff may not evade CAFA jurisdiction while simultaneously expanding recovery. 551 F.3d at 409. For example, in *Tanoh v. Dow Chemical Co.*, the Ninth Circuit held that seven state court actions, each with fewer than 100 plaintiffs, should not be treated as a single "mass action" under CAFA. 561 F.3d 945 (9th Cir. 2009). The court concluded that the plaintiffs were not clearly evading CAFA jurisdiction by filing several "copycat" actions, like the *Freeman* plaintiffs, because the plaintiffs were not representing a nationwide class and were not alleging the same injuries. *Id.* at 954. The court noted that if the seven actions were copycat actions, the holding could be different because "competing claims to represent the same class of plaintiffs might raise concerns that overlapping or identical claims would be litigated in multiple jurisdictions." *Id.* Thus, the Ninth Circuit's holding would support aggregation in the context of this case because the Simons are representing a class of plaintiffs already before this Court and alleging the same injuries.

the same counsel and the complaints had overlapping claims for relief, but the class members lived in different communities in Washington State. The defendant sought inclusion of the actions into an already existing MDL that had within it a class action (*Fliss*) defined broadly enough to include the *Steiner* and *Hillary* members, so the defendant removed the actions to federal court. *Id.* at *2. The plaintiffs filed motions to remand, arguing that each complaint alleged that recovery of its respective class would be less than five million dollars. *Id.* The court held that the *Steiner* and *Hillary* plaintiffs could not avoid the original federal jurisdiction it had acquired by the filing of the *Fliss* class action, which satisfied CAFA's requirements, and conferred federal jurisdiction over the claims in the *Steiner* and *Hillary* suits. *Id*. at *6. The court relied upon *Freeman* in holding that the claims must be aggregated with *Fliss* because, in looking beyond the pleadings, there was no colorable basis for separating plaintiffs by their geographical location and because the plaintiffs sought to expand their recovery by filing actions that could allow a member plaintiff to recover from both the state court actions and the *Fliss* action. *Id*.

Here, both CAFA and MDL considerations warrant looking beyond the pleadings like in *Freeman* and *In re Kitec*, respectively. Both *Mendez* and *Trager* are CAFA actions that allege Marriott's liability for injuries sustained by the data breach—classes that are not only multi-state, but international. *See Mendez* Compl. ¶ 59; *Trager* Compl. ¶ 46.[5] Because the Simons' claims are wholly included in both *Mendez* and *Trager*, the Simons are attempting to represent class members already before the court in those actions. This defeats the purpose of CAFA by forcing litigation of the same claims, in both state and federal court. Although the Simons seek to plead around the minimal diversity requirement of CAFA, rather the amount in controversy like in

---

[5] As noted above, the *Mendez* and *Trager* actions define their classes broadly: "[a]ll persons [whose [personal identifying information] was accessed, compromised, or stolen from Marriott" because of the data breach. *See Mendez* Compl. ¶ 59; *Trager* Compl. ¶ 46.

*Freeman*, the intent of this manipulation remains the same—divesting this court of jurisdiction it already has acquired.

Moreover, neither the Simons' Complaint nor their Motion to Remand offers any legitimate basis for the need to litigate their claims separately from the MDL because of their geographical locations—having a domicile abroad. Consequently, they do not offer any colorable basis for limiting their claims by a characteristic that evades federal jurisdiction. *See In re Kitec*, 2010 WL 11618052, at *1. Additionally, the Simons are seeking to expand their recovery because they could recover from both their state court action and from the MDL, from either (or both) the *Mendez* or *Trager* actions.

Furthermore, like in *Freeman*, there is ample evidence here that the Simons' complaint was designed to manipulate federal jurisdiction, albeit by defeating the diversity requirement rather than the amount-in-controversy requirement. As noted, prior to the filing of the Simons' suit, another plaintiff, Frank, brought a nearly identical class action against Marriott in Connecticut state court and voluntarily dismissed it the day after Marriott removed it to federal court. Then, the same attorneys filed suit on behalf of the Simons in the same state court, revising slightly the class definition from *Frank* in a transparent effort to avoid federal jurisdiction. Specifically, the attorney changed only "*live* abroad" to "*domiciled* abroad," to prevent an argument that a plaintiff living abroad nonetheless was domiciled in the United States. *Compare Frank* Compl. ¶ 59, *with* Compl. ¶ 66 (emphasis added).

The policy justifications for finding federal jurisdiction under CAFA even when it is absent on the face of the plaintiff's complaint, such as preventing inefficiency and "ensuring 'Federal court consideration of interstate cases of national importance,'" hold even more true in the MDL context. *See Standard Fire Insurance Co. v. Knowles*, 568 U.S. 588, 595 (2013) (quoting § 2(b)(2),

119 Stat. 5).  The primary objective of an MDL is to "promote the just and efficient conduct of . . . actions" that involve common questions of fact.  28 U.S.C. § 1407(a).  This interest in fairness and efficiency is even stronger in the context of MDLs than in a stand-alone CAFA class action because MDLs combine multiple class (and individual) actions into one lawsuit for purposes of pretrial proceedings.

Allowing the Simons to manipulate CAFA would be harmful here because it could disrupt the orderly progress of the pretrial process in the Marriott MDL.  While the Simons' action was pending in the District of Connecticut, they tried to force Marriott to file an answer immediately, in contradiction to the schedule set by this Court; refused to agree to a stay while the case was transferred to the Marriott MDL; and objected to an extension of time, resulting in Marriott filing an emergency motion. Defs.' Opp'n 10.  Harm to putative class members and defendants is exactly what MDLs seek to avoid by streamlining the litigation process and encouraging settlement. *Manual for Complex Litigation (Fourth)* (2004) 22.315 (explaining the bellwether process).  Here, granting the Motion to Remand would open the door for possibly inconsistent verdicts, as well as duplicative costs to both Defendants and putative class members.

### B.  Fraudulent Joinder

Lastly, a plaintiff's ability to amend a complaint to avoid federal jurisdiction is limited by the principle of fraudulent joinder.  The fraudulent joinder doctrine permits removal to federal court when a non-diverse party is a defendant in a case, if that party is not a proper defendant, but rather named only to defeat diversity jurisdiction.  *Marshall v. Manville Sales Corp.*, 6 F.3d 229, 232 (4th Cir. 1993).  The doctrine "effectively permits a district court to disregard, for jurisdictional purposes, the citizenship of certain nondiverse defendants, assume jurisdiction over a case, dismiss the nondiverse defendants, and thereby retain jurisdiction." *Mayes v. Rapoport*,

198 F.3d 457, 461 (4th Cir. 1999). In *Mayes*, the Fourth Circuit found the fraudulent joinder doctrine to be dispositive when evaluating whether to allow amendments to a complaint *post*-removal. *Id.* at 463. The court held that, when the district court is evaluating a request to amend a complaint, it should carefully scrutinize any attempt to add a nondiverse defendant immediately after removal and "be wary that the amendment sought is for the specific purpose of avoiding federal jurisdiction." *Id*.

What the Simons are attempting to do here is analogous to what the fraudulent joinder rule prohibits, and further militates against granting a remand to state court. In fraudulent joinder cases, the district court may retain jurisdiction over cases that it would be forced to remand if the court were bound to determine its jurisdiction by the face of the plaintiff's pleadings alone. The policy which the fraudulent joinder rule promotes is no less applicable here.

## C. When this Court should not exercise jurisdiction

An action involving an MDL defendant could be legitimately subject to state court jurisdiction and not within the purview of federal jurisdiction. The *Manual for Complex Litigation* even contemplates coordination between cases in the federal and state court systems by harmonizing scheduling hearings, discovery schedules and rulings, and witness availability. *See Manual for Complex Litigation (Fourth)* § 31.312 (2004); *see also Guidelines and Best Practices for Large and Mass-tort MDLs (Second)* 81 (2018). But this coordination assumes the existence of legitimately filed state court actions for which there is no basis to exercise federal jurisdiction—not federal claims genetically altered to keep them in state court. Moreover, coordination is not feasible if the schedule in the state court case interferes with the schedule in the MDL—a circumstance likely to occur here if a remand is ordered, given the tactics previously employed by the Simons while their case was pending in Connecticut.

For the reasons explained above, the Motion to Remand, ECF No. 28, is DENIED.


September 20, 2019                                        /S/
Date                                          Paul W. Grimm
                                               United States District Judge



eal